IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| DEXTER CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:18-cv-2407-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| CORRECTIONS, LEROY CARTLEDGE, | ) | |
| Warden of Broad River Correctional | ) | |
| Institution, and DENNIS BUSH, Warden of | ) | |
| Broad River Correctional Institution, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 47, that the court grant in part and deny in part defendants South Carolina Department of Corrections ("SCDC"), Leroy Cartledge ("Cartledge"), and Dennis Bush's ("Bush") (collectively, "defendants") motion for summary judgment, ECF No. 34. For the reasons set forth below, the court adopts the R&R and grants in part and denies in part defendants' motion.

## I.  BACKGROUND

### A. Factual History

The R&R ably recites the facts of this case and includes a thorough review of the evidence consequential to the Magistrate Judge's findings and recommendations. Because neither party objects to the R&R's presentation of the facts or relevant evidence, the court provides only a broad-strokes summary of those facts material to its legal analysis in lieu of a more comprehensive recitation.

1

Plaintiff Dexter Crawford ("Crawford") was an inmate at Broad River Correctional Institution ("Broad River") during the time period relevant to this action. In his complaint, Crawford alleges that he was assaulted by other inmates at Broad River on two occasions. With respect to the first, Crawford alleges that "[o]n or about June 1, 2016, . . . five [ ] inmates entered his room and started violently stabbing him." ECF No. 2, Compl. ¶¶ 18–20 (the "Summer 2016 Assault"[1]). Crawford, who is legally blind, claims that during the attack he attempted, unassisted, to "make it down the stairs to ask for help," but that before he could "get out of the door, several other inmates came up to him and began beating and stabbing him again." Id. ¶¶ 22–23. With respect to the initial portion of the assault that took place in Crawford's cell, Crawford alleges that an SCDC correctional officer "was [ ] supposed to be on duty that day and either failed to be on the wing and/or did nothing to prevent or stop the attack." Id. ¶ 21. With respect to the latter part of the assault, which took place after Crawford made his way down the stairs, Crawford alleges that two correctional officers "watched the attack but failed to intervene, prevent, or stop the attack from occurring." Id. ¶ 24. After the Summer 2016 Assault, the complaint states that Crawford was transported to Palmetto Richland Hospital, "stitched up", and then returned to Broad River, where he was "placed [ ] back in the yard with the same inmates who had stabbed and beat him . . . ." Id. ¶¶ 25–26.

---

[1] As discussed in more detail below, the record contains conflicting evidence regarding the timing of the first alleged assault on Crawford. Crawford avers in his complaint and in subsequent testimony that the attack occurred on June 1, 2016, but prison records indicate that the attack occurred on August 2, 2016. Because the exact date of the first alleged assault is disputed, the court refers to the assault as the "Summer 2016 Assault".

Crawford claims permanent physical injuries as well as emotional injuries as a result of the Summer 2016 Assault.

Crawford further alleges that he was assaulted a second time "[o]n or about January 16, 2017" (the "January 2017 Assault"[2]).  Id. ¶ 32.  According to Crawford, "gang members came into his room and beat and stabbed him in his neck and back."  Id. ¶ 36.  Prior to the assault, Crawford claims that he requested to move cells based on the Summer 2016 Assault and subsequent threats of harm but that Broad River administrators refused to move him.  Crawford further alleges that at, at the time of the attack, "there [were] no correctional officers on [his] wing," and that when correctional officers did arrive on scene, they denied Crawford's request to be taken "to medical."  Id. ¶¶ 37–38.  Crawford claims that after the January 2017 Assault, his request to be put in protective custody was also denied.  As a result of the January 2017 Assault, Crawford claims permanent physical injuries as well as emotional injuries.

### B. Procedural History

This lawsuit was initially filed as a multi-plaintiff action on March 16, 2018 in the Richland County Court of Common Pleas by a number of Broad River inmates in the custody of SCDC against SCDC and two wardens at Broad River, Cartledge and Bush. 9:18-cv-1148-MBS-BM, ECF No. 1-1.  Each of the plaintiff's claims shared common allegations of widespread violence and understaffing at Broad River.  Defendants removed the multi-plaintiff action to this court on April 26, 2018.  Id., ECF No. 1.

---

[2] As the court explains in greater depth below, the exact timing of the alleged second assault of Crawford is also in dispute.  However, the parties seem to agree that if an assault occurred as Crawford alleges, it took place sometime in January.  As such, the court refers to the second alleged assault on Crawford as the "January 2017 Assault".

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02 (D.S.C.), the court assigned the matter to Magistrate Judge Bristow Marchant, who severed the plaintiffs' claims into several plaintiff-specific actions on August 29, 2018. ECF No. 1. The instant action is one of those severed matters. In his complaint, Crawford brings four causes of action. Crawford's first claim requests "temporary and permanent injunctive relief" against defendants pursuant to South Carolina state law and 18 U.S.C. § 1983. Compl. ¶¶ 45–47. Crawford's second and third claims allege violations of his civil rights pursuant to § 1983 against Cartledge and Bush. With respect to his second claim, Crawford alleges that Cartledge and Bush violated his rights by, inter alia, "allowing uncontrolled violence" within Broad River, "failing to provide protection and security" for Crawford, "allowing inmate[s] to have dangerous weapons," and "failing to provide necessary, appropriate[,] and proper medical and mental health care[.]" Id. at ¶ 49. With respect to his third claim, Crawford alleges that Cartledge and Bush, inter alia, failed to implement appropriate procedures and customs at Broad River and failed to "adequately train and supervise its [sic] employees[.]" Id. at ¶¶ 54–55. Finally, Crawford's fourth cause of action asserts a tort claim against SCDC pursuant to the South Carolina Tort Claims Act ("SCTCA") for negligence and gross negligence. Id. at ¶¶ 58–59.

On July 25, 2019, the matter was reassigned to Magistrate Judge Baker. ECF No. 18. On February 28, 2020, defendants filed a motion for summary judgment. ECF No. 34. Crawford filed a response to the motion, ECF No. 43, and defendants replied, ECF No. 44. On June 11, 2020, Magistrate Judge Baker issued the R&R, which recommends that the court grant in part and deny in part defendants' motion for summary judgment. ECF No. 47. On July 2, 2020, defendants filed objections to the R&R, ECF No. 50, and

on July 16, 2020, Crawford responded to those objections, ECF No. 51. Crawford did not lodge any objections of his own to the R&R, and the time to do so has now expired. As such, this matter is now ripe for the court's review.

## II.  STANDARD

### A.  R&R

The Magistrate Judge only makes a recommendation to the court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. <u>Id.</u> at 270-71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. <u>Id.</u> However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948).

## B.  Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact."  Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012).  Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. (quoting Fed. R. Civ. P. 56(e)).  The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1

## III.  DISCUSSION

Before delving into the disputed issues, the court briefly summarizes the findings of the R&R to which the parties did not object.  In their motion, defendants first argue that they are entitled to summary judgment because Crawford failed to exhaust his administrative remedies, a mandatory condition precedent to filing suit under the Prisoner's Litigation Reform Act, 42 U.S.C. § 1997e(a).  Alternatively, defendants' motion asserts a number of other grounds for summary judgment—that defendants are entitled to Eleventh Amendment Immunity, that Cartledge and Bush are entitled to qualified immunity, and that Crawford's constitutional claims, tort claims, and claims for injunctive relief fail as a matter of law.

The R&R made several findings to which the parties do not object.  First, the R&R found that "the Eleventh Amendment bars [Crawford]'s § 1983 claim for injunctive relief and bars [Crawford]'s § 1983 claims for monetary damages [ ] against [ ] Cartledge and Bush in their official capacities."  ECF No. 47 at 22.  Further, the R&R found that Eleventh Amendment immunity does not extend to SCDC with respect to Crawford's tort claims because "SDCD voluntarily removed this case to federal court" and thus "consented to suit" for those claims.  Id.  Neither Crawford nor defendants object to the R&R's findings or consequent recommendations on Eleventh Amendment immunity.

7

The court has reviewed that portion of the R&R for clear error and finds none.  As such, the court grants in part and denies in part defendants' motion for summary judgment with respect to defendants' defense of Eleventh Amendment immunity.  See Diamond, 416 F.3d at 315 ("[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").  Specifically, the court grants summary judgment in favor of the defendants on Crawford's claim for injunctive relief under § 1983 and on Crawford's § 1983 claims for monetary damages against Cartledge and Bush to the extent those claims are alleged against Cartledge and Bush in their official capacities.

Additionally, the R&R found that Crawford's claims for injunctive relief under South Carolina state law are moot because Crawford is no longer in SCDC custody, meaning that the court has nothing to enjoin.  Crawford does not object to this finding, and the court agrees with the analysis of the R&R.  See Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (finding that a prisoner's transfer from the subject correctional facility moots his claim for injunctive relief).  As such, the court grants summary judgment in favor of defendants on Crawford's claims for injunctive relief.  Further, the R&R found that Cartledge and Bush are not entitled to qualified immunity on Crawford's § 1983 claims.  The court agrees and therefore denies summary judgment with respect to defendants' claim of qualified immunity.  Finally, the R&R found that Crawford's tort claims against SCDC depended on genuine issues of material fact, making summary judgment unavailable.  This finding also failed to elicit objection and contains no clear error.  As such, the court denies summary judgment on Crawford's tort claims against

SCDC.  The R&R's remaining recommendations garnered specific objections and thus require de novo review, which the court conducts below.

To recap, after the court adopts the R&R's unopposed findings, Crawford's remaining claims are: (1) a § 1983 claim against Cartledge and Bush in their individual capacities based on Cartledge and Bush's failure to protect Crawford, (2) a § 1983 claim against Cartledge and Bush in their individual capacities for failing to adequately train and supervise their employees, and (3) a claim against SCDC for negligence and gross negligence under the SCTCA.  The court now turns to the findings of the R&R to which defendants did specifically object.  Defendants have lodged two objections, the first of which relates to the issue of exhaustion and the second of which relates to the substance of Crawford's § 1983 claims against Cartledge and Bush.  The court addresses each in turn.

### A.  Exhaustion

As their first objection, defendants contend that the R&R failed to properly analyze the issue of exhaustion with respect to both the Summer 2016 Assault and the January 2017 Assault.  With respect to the former, the R&R found that although Crawford did not exhaust certain administrative remedies, his failure to do so is excused because Broad River's "Inmate Grievance System operated as a 'dead end' . . . such that the administrative remedy process was unavailable to [Crawford]."  ECF No. 47 at 14. With respect to the latter assault, the R&R found that Crawford exhausted the administrative remedies available to him because the grievance form he filed "sufficiently put the SCDC prison administrators on notice of the incident, such that

further grievances on the issue were not required." Id. at 19.  Defendants disagree on both accounts.  The court reviews the applicable law before addressing each in turn.

### 1. Exhaustion Requirement under the PRLA

The Prison Litigation Reform Act ("PRLA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has upheld the plain language of the statute, holding that "Congress has mandated exhaustion clearly enough," Booth v. Churner, 532 U.S. 731, 741 (2001), and that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," Porter v. Nussle, 534 U.S. 516, 532 (2002).  To exhaust his or her administrative remedies, a prisoner must comply with his or her prison's grievance procedure, Jones v. Bock, 549 U.S. 199, 218 (2007), which includes "compliance with [ ] deadlines and other critical procedural rules . . . ."  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  "[U]nless [a] prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."  Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002).

A prisoner is excused from failing to exhaust his or her administrative remedies, however, where they are literally or effectively unavailable.  Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) ("[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies[.]").  "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself

of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has provided three examples in which an administrative remedy, although "in the books", is not available to a prisoner: (1) where the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where the process is governed by "an administrative scheme [ ] so opaque that it becomes, practically speaking, incapable of use," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859–60. In determining whether an administrative remedy was available to a prisoner, courts are to "apply [the law] to the real-world workings of prison grievance systems." Id. at 1859.

To that end, the Fourth Circuit recently held:

> The main purpose of the PLRA's exhaustion requirement is "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." [Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008)]. Accordingly, to satisfy the exhaustion requirement, grievances generally need only be sufficient to "alert[ ] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013) (collecting cases). "Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." Id.

Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017).

### 2. The Summer 2016 Assault

With respect to the Summer 2016 Assault, "it is undisputed that [Crawford] did not exhaust his administrative remedies in accordance with [the SCDC's] Inmate

11

Grievance System."[3]  ECF No. 47 at 10.  However, the R&R found administrative remedies were effectively unavailable to Crawford because "the Inmate Grievance System operated as a 'dead end.'"  Id. at 14.  Defendants object, arguing that the grievance Crawford filed "is clearly untimely."  ECF No. 50 at 5.

To resolve this objection, the court must first explain the factual discrepancy on which it depends.  As indicated above, Crawford alleges in his complaint that the Summer 2016 Assault took place "[o]n or about June 1, 2016."  Compl. ¶ 18.  However, the prison records on which Crawford now relies indicate that the assault took place on August 2, 2016.  A management information note ("MIN") from Broad River dated August 3, 2016 states that on August 2, 2016, Crawford was involved in an inmate assault in which shanks were used and which resulted in Crawford being "taken to medical to be seen."  ECF No. 34-5 at 2.  Additionally, Crawford filed a "Step 1" grievance form on August 5, 2016, in which he indicates he was assaulted on August 2, 2016.

Defendants argue that the Summer 2016 Assault, if it occurred at all, must have occurred on June 1, 2016.  As defendants note, Crawford testified in his deposition that the Summer 2016 assault occurred on June 1, 2016, not August 2, 2016.  However, in response to defendants' summary judgment motion, Crawford claims that he "may have been confused about the dates of his assaults during his deposition . . . ."  ECF No. 43 at 16.  Because the prison records are more convincing than Crawford's memory of specific

---

[3] The SCDC grievance procedure is outlined comprehensively in SCDC Policy GA-01.12 ("Inmate Grievance System"), ECF No. 43-1, and summarized ably by the Magistrate Judge, ECF No. 47 at 8–10.  Rather than restate the applicable procedures, the court discusses the material provisions as they become relevant to defendants' objections.

dates, the court agrees with the Magistrate Judge that, for the purposes of exhaustion

issue, the court should proceed as if the Summer 2016 Assault occurred on August 2,

2016, not June 1, 2016.  Although this is a factual despite on which conflicting evidence

exists in the record, the law is clear that "whether a Plaintiff has properly exhausted all

administrative remedies is a pure question of law . . . ."  <u>E.L ex rel. Lorsson v. Chapel</u>

<u>Hill-Carrboro Bd. of Educ.</u>, 773 F.3d 509, 514 (4th Cir. 2014).  As such, for the purposes

of determining whether Crawford exhausted his administrative remedies, the court agrees

with the R&R that the Summer 2016 Assault occurred on August 2, 2016.  <u>Woodhouse v.</u>

<u>Duncan</u>, 741 Fed. App'x 177, 178 (4th Cir. 2018) (unpublished opinion) ("Judges may

resolve factual disputes relevant to the exhaustion issue without participation of a jury.").

This distinction is critical because it determines whether Crawford filed his Step 1

grievance form within the time frame contemplated by the Inmate Grievance System,

which requires a prisoner to file a grievance form within five working days of an

incident.  Crawford filed his Step 1 grievance form on August 5, 2016, and, as the court

determined above, the Summer 2016 Assault occurred on August 2, 2016.  Therefore,

Crawford's Step 1 grievance form was timely filed, and the court rejects defendants'

argument to the contrary.

  Additionally, defendants argue that Crawford failed to exhaust his administrative

remedies because his "grievance was [ ] returned because [Crawford] attached additional

pages to his grievance in violation of the SCDC grievance policy," and "[a]t no time did

[Crawford] ever attempt to re-submit that grievance without the additional pages . . . ."

ECF No. 50 at 5.  As the R&R explained,

> The Step 1 grievance form shows that it was returned to [Crawford] on
> August 15, 2016[.]  Under "Action Taken," the box "other" was marked.

13

> The response stated the grievance "is being returned" because [Crawford]
> "failed to attempt an informal resolution in accordance with Agency Policy
> GA-01.12, Inmate Grievance System . . . . Also, you cannot add additional
> pages when submitting a grievance."

ECF No. 47 at 13–14 (internal citations omitted).  In other words, SCDC returned

Crawford's grievance form because he did not attempt informal resolution and because

he attached additional pages to his form, which is not permitted under the SCDC

grievance procedure.  As a preliminary finding, the R&R concluded that the 2017

Summer Assault did not require Crawford to attempt an informal resolution because the

grievance form concerns "criminal activity", which the SCDC grievance policy exempts

from the informal resolution requirement.  Defendants agree with this conclusion.  See

ECF No. 50 at 5.  Defendants' argument then, is that Crawford had a responsibility to re-

submit a form that was erroneously rejected by SCDC.  The court disagrees.  The

requirement that a prisoner exhaust his administrative remedies does not require the

prisoner to re-attempt compliance with a grievance procedure when a first attempt is

erroneously rejected.  Moreover, SCDC cannot rest its failure-to-exhaust argument on a

purely technical defect, like the inclusion of additional pages that are arbitrarily

forbidden.  Wilcox, 877 F.3d at 167 n.4 ("[T]o satisfy the exhaustion requirement,

grievances generally need only be sufficient to 'alert the prison to the nature of the wrong

for which redress is sought.'").  The court agrees with the R&R that SCDC's erroneous

rejection of Crawford's Step 1 grievance form operated as a "dead end" such that the

administrative remedy process was effectively unavailable with respect to the Summer

2016 Assault.

14

### 3.  The January 2017 Assault

With respect to the January 2017 Assault, the defendants submit two arguments. First, they argue that Crawford did not exhaust his administrative remedies because the grievance forms he filed concern a disciplinary action, which he received for striking a correctional officer on January 16, 2017, and not the January 2017 Assault.  In other words, defendants contend that Crawford cannot rely on his submitted grievance forms as evidence that he exhausted his administrative remedies because the "grievance" Crawford airs in those forms is his disciplinary conviction and not an assault.  The R&R found that although the grievance form's central concern is the disciplinary action, it clearly "mention[s] the alleged assault that occurred on January 16, 2017 and [Crawford]'s fear for his life," and thus "sufficiently put the SCDC prison administrators on notice of the incident . . . ."  ECF No. 47 at 19 (citing Wilcox, 877 F.3d at 167 n.4).  The court agrees.

A review of the disciplinary report and Crawford's grievance forms make clear that the grievance forms apply to both the events that led to Crawford's disciplinary action and the January 2017 Assault, incidents that Crawford contends are intimately connected with one another.  The disciplinary report shows that SCDC disciplined Crawford for striking an employee on January 16, 2017, describing the underlying incident from the point of view of the correctional officer involved:

> I, Cpl. R. Gillyard was standing in front of the shakedown gate. [ ] Crawford arrived to the gate requesting to be put in the holding cell. [ ] Crawford was told by Lt. Anderson that he needed to report back to his assigned unit. [ ] Crawford refused and pushed the shakedown gate striking my upper arm as he pushed his way through.

ECF No. 34-6 at 2–3.  On January 31, 2017, Crawford was found guilty of striking a correctional officer, ECF No. 34-9 at 3, and he filed a Step 1 grievance form objecting to

his conviction on February 4, 2017, as well as a Step 2 grievance form after the first form was rejected.  As the R&R explained, the grievances do not solely grieve the disciplinary action but "also mention the alleged assault that occurred on January 16, 2017 and [Crawford's subsequent] fear for his life."  ECF No. 47 at 19.  Indeed, the grievance forms not only include Crawford's claims of the 2017 January Assault, but they also reflect the close connection between the assault and the events that led to Crawford's disciplinary action.  Crawford explained in his Step 1 grievance form,

> On January 16, 2017, I approached Cpl. Gillyard [to] inform him that I just got stab[bed] and rob[bed,] [and I] wanted to check on PC [protective custody].  He asked for my I.D. and spoke with Cpt. Jones, came out about 5 mins later saying Cpt. Jones said that I need to go back to [my] dorm.  When Cpt. Gillyard open[ed] [the] gate [to] give me back my I.D.[,] I push[ed] my way through [the] gate[,] fearing for my life.

ECF No. 34-9 at 2.  Crawford's Step 2 grievance form contains a similar recounting of the January 2017 Assault.  ECF No. 43-10 at 2 ("I'm [a] blind inmate who was rob[bed] and stab[bed] . . . If [I did] not push through [the] gate[,] [I] could possibly los[e] my life.").  As such, the grievance forms put SCDC on notice of the January 2017 Assault and demonstrate that the events that led to Crawford's disciplinary actions arise directly from the January 2017 Assault.  Therefore, the court agrees with the R&R that the grievance forms contain sufficient references to the January 2017 Assault to apply to the January 2017 Assault for the purposes of exhaustion.  The court rejects defendants' argument to the contrary.

Second, defendants present a related argument that Crawford failed to exhaust his administrative remedies because his Step 1 grievance form was untimely.[4]  Indeed,

---

[4] Again, a factual dispute about the exact date of the second alleged assault on Crawford underlies defendants' argument.  Crawford testified that the January 2017

Crawford filed his Step 1 grievance form on February 4, 2017, which is more than five working days after the January 2017 Assault allegedly occurred. The R&R agreed that Crawford's filing was untimely; however, it found that Crawford's untimely filing "did not compel a finding that [he] failed to exhaust his administrative remedies." ECF No 47 at 19. The R&R explained:

> [W]hile Defendants argue that [Crawford] did not file his grievance in a timely manner after the [January 2017 Assault], this alleged deficiency was not raised by the prison administrators in response to [Crawford]'s Step 1 grievance. Rather, [Crawford]'s Step 1 grievance was returned processed, and [Crawford] proceeded with the appeals process. Given that the prison administrators accepted the allegedly untimely Step 1 grievance when it was submitted, it would be inconsistent to now consider that grievance as improper based on the time of its filing.

Id.

Defendants object to this finding, arguing that "it is clear that when SCDC received [Crawford's Step 1] grievance [form,] it was solely in regards to his disciplinary conviction," and therefore that "SCDC treated the grievance as timely because [Crawford] was timely in grieving his disciplinary conviction that occurred on January 31, 2017 . . . ." ECF No. 50 at 7. In other words, defendants' position is that SCDC only processed Crawford's grievance as timely because it was timely with respect to Crawford's disciplinary action. Therefore, the fact that SCDC treated Crawford's Step 1

---

Assault occurred at some point before the January 16, 2017 events that led to his disciplinary action. Defendants contend that the January 2017 Assault, if it occurred at all, must have happened at least one day prior to January 16, 2017. The R&R seems to indicate that the January 2017 Assault occurred on January 16, 2017, immediately prior to the events that led to Crawford's disciplinary action. The court need not resolve this factual dispute to determine whether Crawford exhausted his administrative remedies because all of the alleged dates are more than five working days before Crawford filed his grievance form. As such, the R&R agrees with defendants that Crawford's Step 1 grievance form was untimely filed but nevertheless found that the form's untimeliness was not fatal for the reasons discussed below.

grievance form as timely should not affect the form's untimeliness with respect to the January 2017 Assault. However, as discussed above, the court agrees with the R&R that Crawford's Step 1 grievance form served to grieve both Crawford's disciplinary action and the January 2017 Assault. As such, the SCDC's treatment of the grievance form as timely applies to Crawford's grievance of his disciplinary action as well as his grievance of the January 2017 Assault. The law does not require a prisoner to discern which underlying incident the treatment of his grievance form applies to. Thus, the court agrees with the R&R that, based on SCDC's processing of the grievance as timely, "it would be inconsistent to now consider that grievance as improper based on the time of its filing." ECF No. 47 at 19. Accordingly, the court rejects defendants' objections on the issue of exhaustion and denies the motion for summary judgment with respect to that ground.

**B. Crawford's § 1983 Claims**

As an initial matter, the court notes one rather technical recommendation of the R&R with respect to Crawford's § 1983 claims to which neither party objects. The R&R found that "Cartledge could not have been personally involved in [the January 2017 Assault], as he was not employed at Broad River during that time," and likewise, that "Bush could not have been involved in [the Summer 2016 Assault]" because he was not employed at Broad River at that time. ECF No. 47 at 45. Accordingly, the R&R recommends that "Cartledge [ ] be granted summary judgment with respect to [Crawford]'s § 1983 claim[s] specific to the [January 2017 Assault]," and that "Bush [ ] be granted summary judgment with respect to [Crawford]'s § 1983 claim[s] specific to [the Summer 2016] Assault." Id. Crawford did not object to this recommendation. Reviewing it for clear error, the court finds none. Therefore, the court adopts this finding

18

of the R&R and grants defendants' motion for summary judgment with respect to Crawford's § 1983 claims to the extent that those claims allege that Cartledge committed a violation with respect to the January 2017 Assault and to the extent that those claims allege that Bush committed a violation with respect to the Summer 2016 Assault. The court now court turns to the disputed issues concerning Crawford's constitutional claims under § 1983.

Defendants lodge two objections to the Magistrate Judge's handling of Crawford's § 1983 claims. First, defendants argue that, contrary to the Magistrate Judge's recommendation, Crawford has not established a failure-to-protect claim against Cartledge and Bush because there is no evidence to show that the wardens had knowledge of a substantial risk to prisoner safety. Second, defendants argue that Crawford has not established a claim for supervisory liability against Bush and Cartledge because "there [i]s absolutely no evidence that [ ] Cartledge and Bush knew that a subordinate 'was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury.'" ECF No. 50 at 13 (citation removed). The court addresses each objection in turn, overruling each.

### 1. Failure to Protect

The R&R found that the viability of Crawford's first § 1983 claim depends on whether Crawford can show that Cartledge and Bush violated his rights under the Eighth Amendment,[5] which in this case requires a showing that Cartledge and Bush had

---

[5] Crawford's complaint alleges violations of his rights under the Eighth and Fourteenth Amendments. As a preliminary finding, the R&R noted that "because [Crawford] was a state prisoner during the events at issue and not a pre-trial detainee, his allegations [ ] implicate the Eighth Amendment's proscription against cruel and unusual punishment, not the Fourteenth Amendment's requirement of due process." ECF No. 47

knowledge of a substantial risk to Crawford's safety and that Cartledge and Bush consciously disregarded that risk. The R&R concluded that both prongs depend on genuine issues of material fact, making summary judgment inappropriate. Defendants object, arguing that Cartledge and Bush did not have knowledge of a substantial risk to Crawford's safety as a matter of law. The court agrees with the R&R, overrules defendants' objection, and adopts the R&R in this respect.

A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). There is no dispute that Cartledge and Bush, in their individual capacities, are proper § 1983 defendants because they were acting under the color of state law in their positions as wardens of Broad River. Instead, the question before the court is whether Cartledge and Bush violated Crawford's constitutional rights. In this case, Crawford's allegations against Cartledge and Bush implicate the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993) ("The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

---

at 23–24. Crawford does not object to this finding, and the court agrees with the R&R. As such, the court dismisses Crawford's § 1983 claims to the extent that they allege violations of his Fourteenth Amendment rights. As discussed below, Crawford's § 1983 claims remain viable under the Eighth Amendment.

The Eighth Amendment guarantees the right of the people to be free from the infliction of "cruel and unusual punishments[.]"  U.S. Const. Amend. VIII.  The Eighth Amendment's promise imposes upon prison officials the duty to "provide humane conditions of confinement" to the incarcerated.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  While this duty "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), it does require officials to "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526–527 (1984), which includes a responsibility "to protect prisoners from violence at the hands of other prisoners," Farmer, 511 U.S. at 833.  Recognizing that prisons "are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct," Hudson 468 U.S. at 526, the Supreme Court has noted that the Eighth Amendment does not impose upon prison officials a duty to ensure complete safety, but it does mandate that officials "are not free to let the state of nature take its course," Farmer, 511 U.S. at 832, 844.

An Eighth Amendment failure-to-protect claim requires that a prisoner make two showings.  First, the prisoner must show "a serious deprivation of his rights, " Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014), meaning that the "prison official's act or omission [ ] result[s] in the denial of the minimal civilized measure of life's necessities," Farmer, 511 U.S. at 834.  A prisoner can make such a showing "in the form of a serious or significant physical or emotional injury."  Danser, 772 F.3d at 346 (internal quotation marks and citations omitted).  In this case, defendants do not dispute that Crawford's alleged injuries establish a "sufficiently serious" deprivation of his rights, such that he

satisfies the first element of his failure-to-protect claim under the Eighth Amendment. Farmer, 511 U.S. at 834.

The second element, central to the instant objection, requires a prisoner to show that the prison official has a "sufficiently culpable state of mind," meaning that the official acted intentionally or with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)) (internal quotation marks omitted). The Supreme Court has determined that "deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other," and is most fairly characterized as "recklessly disregarding [a known] risk." Id. at 836. Determining whether a prison official was deliberately indifferent involves a two-pronged, subjective inquiry. A prison official acts with deliberate indifference where (1) "he knows that inmates face a substantial risk of serious harm," and (2) he "disregards that risk by failing to take reasonable measures to abate it." Id. at 847. A plaintiff must show that the prison official had actual knowledge with respect to both prongs.

Given the difficulty in obtaining direct evidence of deliberate indifference, the law is clear that "[w]hether a prison official acted with 'deliberate indifference' . . . can be proven through direct or circumstantial evidence." Cox v. Quinn, 828 F.3d 227, 236 (4th Cir. 2016). Both prongs of the deliberate indifference inquiry are questions of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Farmer, 511 U.S. at 842). Thus, with respect to the first prong, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. In other words, "a prison official's subjective

actual knowledge can be proven through circumstantial evidence showing, for example, that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Farmer, 511 U.S. at 842). As the Fourth Circuit reasoned, "prison officials may not simply bury their heads in the sand and thereby skirt liability." Id. The "heavy" burden of showing deliberate indifference lies with the prisoner. Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 325 (1986)).

The R&R found that the first prong of the deliberate indifference inquiry—whether Cartledge and Bush had knowledge of a substantial risk of serious harm—depends on genuine issues of material fact, making summary judgment unavailable. The R&R agreed with defendants that "there is no direct evidence of actual knowledge in the record" but concluded that Crawford has presented sufficient circumstantial evidence to create a genuine issue of material fact as to whether Cartledge and Bush had knowledge of a substantial risk to prisoner safety. ECF No. 47 at 39. Specifically, the R&R noted that evidence of staffing shortages and increased assault incidents "indicates that a substantial risk of serious harm to inmates at Broad River was longstanding, pervasive, and well-documented." Id. at 41. "Further," the R&R found, "based on the contraband reports, it appears Cartledge and Bush were kept appraised of the incidents of contraband at Broad River." Id. Defendants object to this portion of the R&R, arguing that "Magistrate Judge Baker erred in recommending that [ ] Cartledge and Bush were aware of 'severe staffing shortages' prior to the alleged assaults on [Crawford]," and "that the

'quarterly report of confiscated property' put [Cartledge and Bush] on notice as to an obvious risk." ECF No. 50 at 9. The court agrees with the R&R and overrules the objection.

The R&R properly relied on circumstantial evidence, which tended to show that the risk to prisoner safety at Broad River was "longstanding, pervasive, and well-documented," to conclude that whether Cartledge and Bush had subjective knowledge of the risk depended on genuine issues of material fact. Specifically, the R&R relied in significant part on the data and reports collected and summarized in the "Roth Report." The Roth Report, drafted by Tim Roth in connection with a settlement of a different case, details the staffing levels at institutions run by SCDC, the effects of understaffing on those institutions, and the responses to understaffing by SCDC prison officials. ECF No. 43-4. As the R&R noted, the Roth Report contains considerable evidence of a staffing crisis at Broad River. See, e.g., id. at 58 ("Security staff vacancies have been a serious concern at Broad River for an extended period. Broad River security staffing levels have decreased substantially since the beginning of calendar year 2011."). Further, the Roth Report contains evidence that, during the time period in which Crawford's alleged assaults occurred, the staffing shortage led to increased incidents of inmate-on-inmate and inmate-on-employee assaults at Broad River. See, e.g., id. at 62 ("At Broad River the number of assault related incidents reported in 2016 and 2017 was more than the overall average reported for the other level 3 facilities. This included both assaults to employees and inmates. The chart below reflects assaults occur at a higher than acceptable level.").

The court agrees with the R&R that the Roth Report contains evidence that the risk to prisoner safety was "longstanding, pervasive, and well-documented," which in turn constitutes circumstantial evidence that Cartledge and Bush had knowledge of the risk. The evidence described above and summarized in further detail in the R&R indicates that there was an obvious risk to prisoner safety at Broad River during the relevant time period. See, e.g., id. at 59 ("In total[,] when considering security staffing levels, the facility has operated at approximately 73.9 percent of the approved funding level during the reported period. As a result of staffing levels, all post assignments are not routinely being filled and workload responsibilities are not being completed as designed based on the established staffing plan."). As the law makes clear, evidence of an obvious risk to prisoner safety is itself circumstantial evidence that prison officials had knowledge of that risk. Farmer, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). As such, the evidence contained in the Roth Report, as evidence of an obvious risk to prisoner safety, "justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." Porter v. Clarke, 923 F.3d 348, 361 (4th Cir. 2019), as amended (May 6, 2019). In other words, the evidence of the obviousness of the risk to prisoner safety, meaning evidence of enduring, severe staffing shortages and increased incidents of assault, indicates that Cartledge and Bush "must have known about" the risk and creates a genuine issue of material fact as to whether Cartledge and Bush had subjective knowledge of the risk. See Makdessi, 789 F.3d at 133 (finding that evidence of a "longstanding, pervasive, [or] well-documented" risk can indicate that prison officials "must have known about it").

25

In their objection, defendants argue that "[t]here is no testimony, affidavit[s], or any other piece of direct or circumstantial evidence indicating that either [Cartledge or Bush] were made aware of the alleged staffing shortages as indicated in the Roth Report." ECF No. 50 at 10. Specifically, defendants argue that the Roth Report cannot show that Cartledge and Bush had knowledge of the risk to prisoner safety because the Roth Report was not drafted until March 2018, long after Crawford's alleged assaults occurred. What defendants miss is that the R&R did not rely on the Roth Report as direct evidence of Cartledge and Bush's knowledge of the risk to prisoner safety; it relied on the reports and data contained within the Roth Report as evidence that the risk to prisoner safety was "longstanding, pervasive, and well-documented," which, in turn, constitutes circumstantial evidence that Cartledge and Bush "must have known" about the risk. In other words, the R&R did not find that Cartledge and Bush learned of the risk to prisoner safety by reading the Roth Report; it held that the Roth Report contains evidence that the conditions existing at Broad River presented an obvious risk to prisoner safety, which constitutes circumstantial evidence that Cartledge and Bush knew of the risk. The court agrees with the R&R's assessment. Further, defendants similarly argue that the "quarterly reports of confiscated material" did not put Cartledge and Bush on notice of the substantial risk to prisoner safety. Again, the court finds that the reports themselves indicate the obviousness of the risk, which constitutes circumstantial evidence that Cartledge and Bush subjectively knew of the risk. As such, the court agrees with the R&R that the evidence of an obvious risk to Crawford's safety creates a genuine issue of

material fact as to Cartledge and Bush's subjective knowledge of that risk.[6] Therefore, summary judgment on Crawford's failure-to-protect claim is inappropriate.

### 2. Supervisory Liability

Finally, defendants object to the Magistrate Judge's recommendation that the court deny summary judgment with respect to Crawford's supervisory liability/failure-to-train claim. Specifically, defendants contend that "there is no evidence in the record to [ ] establish the requisite knowledge needed for [Crawford's] supervisory liability claim," and similarly that "there is no evidence that [ ] Cartledge and Bush were responsible for training the correctional officers at [Broad River]." ECF No. 50 at 13. The court addresses each argument in turn, disagreeing with each.

First, the court addresses defendants' supervisory liability argument. Like a failure-to-protect plaintiff, a supervisory liability/failure-to-train plaintiff must show the defendant's deliberate indifference to a constitutional violation. To establish a supervisory liability claim, a defendant must present evidence that shows: (1) the prison official-supervisor had actual or constructive knowledge that his or her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury,

---

[6] Defendants also find error in the R&R's reliance on two district court cases, Wynn v. Perry, 2018 WL 1077321, at *3 (W.D.N.C. Feb. 27, 2018), and Hollabaugh v. Cartledge, 2016 WL 11423538, at *2 (D.S.C. Mar. 7, 2016), report and recommendation adopted, 2016 WL 2848370 (D.S.C. May 16, 2016). The R&R relied on those cases for the proposition that "a prison official may not avoid liability simply because he was unaware that [a plaintiff] was 'especially likely to be assaulted by the specific prisoner who eventually committed the assault.'" Wynn, 2018 WL 1077321, at *23. As such, defendants' attempt to distinguish these cases based on the distinct evidentiary record of each is unconvincing. To be sure, defendants are correct that the Wynn and Hollabaugh courts relied, in part, on direct evidence of the respective defendants' subjective knowledge; however, the court finds that the circumstantial evidence in this case is sufficient to create a genuine issue of material fact with respect to Cartledge and Bush's knowledge, such that no direct evidence is necessary.

(2) the prison official-supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Defendants' argument that Cartledge and Bush did not have "the requisite knowledge needed for [Crawford]'s supervisory liability claim" implicates the first prong of the Shaw analysis. ECF No. 50 at 13. The R&R found that whether Cartledge and Bush had subjective knowledge of their subordinates' allegedly violative conduct depends on genuine issues of material fact. In so finding, the R&R again relied on the circumstantial evidence in the record that tends to show that the risk of prisoner safety at Broad River was longstanding and pervasive. In other words, the circumstantial evidence that an obvious, longstanding risk to prisoner safety existed at Broad River creates a genuine issue of fact as to whether Cartledge and Bush had knowledge of their subordinates' failure to address the risk. Indeed, evidence of a longstanding and obvious risk to prisoner safety constitutes circumstantial evidence that Cartledge and Bush had subjective knowledge of their subordinate's failure to address the risk. See Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) ("A supervisor's continued inaction in the face of documented widespread abuses [ ] provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates."). Based on the analysis above, then, the court finds that Crawford has presented sufficient circumstantial evidence to establish his supervisory liability claim. Thus, the court rejects defendants' argument.

Next, the court addresses defendants' argument as to Crawford's failure-to-train claim. To impose § 1983 liability based on a failure to train subordinates, a plaintiff must show that: (1) the subordinates violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to properly train the subordinates, thus illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) the failure to train actually caused the subordinates to violate the plaintiff's rights. Hubbard v. Byars, 2015 WL 337642, at *12 (D.S.C. Jan. 26, 2015) aff'd, 606 F. App'x 114 (4th Cir. 2015) (quoting Brown v. Mitchell, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004)).

The latter half of defendants' argument— "there is no evidence that [ ] Cartledge and Bush were responsible for training the correctional officers at [Broad River]"— implicates the second prong of the failure-to-train inquiry and fails for the same reason as defendants' supervisory liability argument. ECF No. 50 at 13. A plaintiff may support his failure-to-train claim against a prison official with circumstantial evidence that the need for different or additional training is obvious. See Hubbard, 2015 WL 337642, at *12 (finding that a plaintiff can establish a failure-to-train claim by showing that "the need for more or different training is so obvious, and the [failure to train is] likely to result in the violation of constitutional rights.") (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)) (altercations in original). As such, the same circumstantial evidence that supports Crawford's failure-to-protect claim in this case also supports his supervisory liability and failure-to-train claims. As such, the court overrules defendants' objections, adopts the R&R with respect to Crawford's § 1983 claims, and denies defendants' motion for summary judgment with respect to the same.

In sum, after the court's resolution of defendants' summary judgment motion, three of Crawford's claims survive and proceed to trial: (1) a § 1983 claim against Cartledge and Brown in their individual capacities based on their failure to protect Crawford, (2) a § 1983 claim against Cartledge and Bush in their individual capacities based on their failure to adequately train and supervise their employees, and (3) a claim against SCDC for negligence and gross negligence under the SCTCA.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS IN PART AND DENIES IN PART** defendants' motion for summary judgment in accordance with this order.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 1, 2020**
**Charleston, South Carolina**